**Kenneth M. LOLLING, Relator,**

v.

**MIDWEST PATROL, Commissioner of Economic Security, Respondents.**

No. C4–95–300.

Court of Appeals of Minnesota.

June 27, 1995.

Review Granted Aug. 30, 1995.

Kenneth M. Lolling, Embarrass, relator, pro se.

Midwest Patrol, Minneapolis, respondent, pro se.

Kent E. Todd, Minn. Dept. of Economic Sec., St. Paul, for respondent Com'r of Economic Sec.

Considered and decided by SHORT, P.J., RANDALL, and HOLTAN,* JJ.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

RANDALL, Judge.

Relator Kenneth M. Lolling appeals from the determination of the Commissioner's representative that Lolling was disqualified from reemployment insurance benefits. Lolling argues that under Minn.Stat. § 268.10, subd. 1(d) (1992), respondent Midwest Patrol failed to file its claim of disqualification in a timely manner, and therefore the Department of Economic Security (department) did not have jurisdiction over the issue.

## FACTS

Lolling worked for respondent Midwest Patrol from March 1, 1993, to April 6, 1994. He was a full-time investigator at the rate of $11 per hour for one client, U.S. Steel. On March 31, 1994, Lolling learned that U.S. Steel had cancelled its contract with Midwest Patrol and that there would be no more investigation work available.

On April 6, Lolling spoke with his supervisor Shawn McGovern by telephone. Lolling indicated he thought he was unemployed, but McGovern disagreed. McGovern told Lolling he would have to travel to Duluth to talk about other assignments. Lolling said he wanted two weeks of vacation so he could look for another job, but McGovern told him that was not necessary as he was still employed. The regional manager, Bill Leoni, also spoke with Lolling that day. Leoni told Lolling he was not laid off and that there were other assignments available. Leoni did not mention specific assignments.

Lolling filed for reemployment insurance benefits within a few days of leaving Midwest Patrol. The department determined Lolling was entitled to benefits. Midwest Patrol did not appeal the determination of validity. In July 1994 Midwest Patrol raised the issue of disqualification based on Lolling's "refusal" to accept other job assignments. The department considered the issue, and in September 1994, a department official determined Lolling was disqualified from receiving benefits. Lolling appealed to a reemployment insurance judge; the judge found Lolling was not disqualified. Midwest Patrol appealed to a Commissioner's representative; the representative found Lolling was disqualified. Lolling appeals.

## ISSUE

Did the Department of Economic Security have jurisdiction to consider the July 1994 claim by Midwest Patrol that Lolling was disqualified from receiving benefits?

## ANALYSIS

The construction of a statute is a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). Lolling argues that the department did not have jurisdiction over the disqualification issue because Midwest Patrol did not file its claim of disqualification in a timely manner. We agree.

Initially, the department argues that the issue is not preserved, claiming Lolling did not raise it before the Commissioner. Generally, if an issue is not presented below, it is not properly raised on appeal. *Jaakola v. Duluth/Superior Area Educ. Television*, 374 N.W.2d 215, 217 (Minn.App.1985). However, this court may consider a jurisdictional question even if it was not previously raised. *See King v. University of Minn.*, 387 N.W.2d 675, 677 n. 1 (Minn.App.1986) (deciding jurisdictional issue despite fact that it was raised for the first time in appellate brief), *pet. for rev. denied* 387 N.W.2d 675 (Minn. Aug. 13, 1986). In addition, this court may decide issues that are pure legal questions and do not involve a determination of disputed facts, so long as neither party is advantaged or disadvantaged in not having a prior ruling. *Valenty v. Medical Concepts Develop.*, 491 N.W.2d 679, 682 (Minn.App.1992), *aff'd in part, modified in part*, 503 N.W.2d 131 (Minn.1993). This is a purely legal question of a jurisdictional nature, and we will address it.

Minn.Stat. § 268.10, subd. 2(1) (Supp.1993) requires a department official to promptly examine each claim for benefits to determine whether the claim is valid. Minn.Stat. § 268.10, subd. 1(d) (1992) provides:

Upon establishment of a benefit year, the commissioner shall give notice to the last

employer for whom the individual worked * * *. *The employer so notified shall have seven days after the mailing of the notice to file a protest to monetary entitlement or a protest raising an issue of ineligibility or disqualification.*

(Emphasis added.) The employer shall raise disqualification issues in the wage and separation information request form. Minn.R. 3310.2700, subp. 2 (1993), 3310.2800, subp. 1 (1993).

Minn.Stat. § 268.10, subd. 2(2) (Supp.1993) provides:

At any time within 24 months from the date of the filing of a valid claim for benefits by an individual, * * * [any] benefit year *employer raises an issue of disqualification in accordance with the rules of the commissioner,* a determination shall be made thereon and a written notice thereof shall be given to the claimant.

(Emphasis added.) As noted in *Nieszner v. Department of Jobs & Training,* 499 N.W.2d 832, 837 (Minn.App.1993), the rules of the Commissioner fail to enumerate how and under what circumstances an employer may raise an issue of disqualification within 24 months. *See* Minn.R. chs. 3305, 3310 (1993). But Minn.Stat. § 268.10, subd. 2(2) does provide the department with jurisdiction when an employee's actions after separation from employment cause disqualification. *See, e.g.,* Minn.Stat. § 268.09, subd. 2 (Supp.1993) (providing that an employee becomes disqualified from future benefits when he or she fails to apply for available suitable work or refuses an offer of suitable reemployment without good cause). Minn.Stat. § 268.10, subd. 2(2), read literally, conflicts with the seven-day period during which an employer may allege disqualification under Minn.Stat. § 268.10, subd. 1(d). *Nieszner,* 499 N.W.2d at 837.

Lolling argues that Midwest Patrol had seven days under Minn.Stat. § 268.10, subd. 1(d), to raise an issue of disqualification. Lolling contends the failure of Midwest Patrol to raise disqualification at that time meant that the issue could not be raised later, even under Minn.Stat. § 268.10, subd. 2(2). Midwest Patrol claims it had 24 months to raise the issue of disqualification.

First we note that the activity complained of by Midwest Patrol took place the same day Lolling was separated from his job: Midwest Patrol alleged, and the Commissioner found, that on April 6, 1994, the last day of Lolling's employment, Lolling failed to apply for available suitable work and failed to accept an offer of suitable reemployment without good cause.

According to Midwest Patrol's representatives, Lolling was told by two managers on April 6 that there were other positions that would be available to him if he would come to Duluth to discuss them. Lolling refused, then sought and received reemployment insurance benefits. Since Midwest Patrol knew of the grounds for disqualification at the time of Lolling's initial claim for benefits, Midwest Patrol was required to raise disqualification at that time. Minn.R. 3310.2800, subp. 1 provides:

Any employer upon receiving a request for wage and separation information *shall,* if in the employer's opinion the claimant should be determined ineligible or disqualified [to] receive benefits pursuant to said claim, *raise the issue of ineligibility or disqualification by completing the separation portion of said form setting forth the facts upon which the employer bases the contention that the claimant should be determined ineligible or disqualified to receive benefits.*

(Emphasis added.) Under Minn.Stat. § 268.10, subd. 1(d), Midwest Patrol had seven days after notice of Lolling's claim to raise disqualification but did not do so. Unless an appeal is taken, an initial determination becomes final. Minn.Stat. § 268.10, subd. 2(3) (Supp.1993); *Nieszner,* 499 N.W.2d at 836. Because Midwest Patrol did not appeal, we conclude the initial April 1994 determination of validity was final.

Minn.Stat. § 268.10, subd. 1(d), and the Commissioner's rule 3310.2800, subp. 1, require a known issue of disqualification to be raised by the employer at the time the separation information is completed since the rule and statute employ the word "shall" instead of "may." *See* Minn.Stat. § 645.44 (1994) ("shall is mandatory"). There is no dispute

that Midwest Patrol did not raise a question of disqualification at the time of Lolling's initial request for benefits. Instead, Midwest Patrol sought to raise the issue several months later pursuant to Minn.Stat. § 268.10, subd. 2(2). The department allowed Midwest Patrol to bring its claim under that statute, even though there are no rules governing that procedure.

The 24–month deadline under subdivision 2(2) conflicts with the seven-day limit for raising disqualification under subdivision 1(d). We conclude the legislature could not have intended to allow employers to completely ignore the seven-day limit in subdivision 1(d) and raise issues of disqualification at their leisure any time within the next 24 months in those circumstances, like here, where the facts leading to a possible disqualification were known at the time of the initial claim for benefits. To allow an unnecessary delay is absurd and unreasonable. *See* Minn. Stat. § 645.17(1) (1994) (providing legislature does not intend result that is "absurd * * * or unreasonable"); *Salmen v. City of St. Paul*, 281 N.W.2d 355, 361 n. 8 (Minn.1979). The 24–month period for raising disqualification can only logically be intended for disqualifying actions that occur *after* the determination of validity and receipt of benefits. Allowing an employer to belatedly raise an issue of disqualification in circumstances such as this case would render meaningless the seven-day limit set forth in Minn.Stat. § 268.10, subd. 1(d), and the aspect of finality of an initial determination provided in Minn. Stat. § 268.10, subd. 2(3). Every law is to be construed to give effect to all its provisions, if possible. Minn.Stat. § 645.16 (1994).

### DECISION

The department did not have jurisdiction to consider Midwest Patrol's July 1994 claim that Lolling was disqualified from receiving benefits.

**Reversed.**