Larry D. ROWE, Relator,

v.

DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.

No. A04–2200.

Court of Appeals of Minnesota.

Oct. 4, 2005.

Peter B. Knapp, William Mitchell Law Clinic, St. Paul, MN, for relator.

Lee B. Nelson, Linda A. Holmes, Department of Employment and Economic Development, St. Paul, MN, for respondent Commissioner.

Considered and decided by
PETERSON, Presiding Judge; WRIGHT, Judge; and FORSBERG, Judge.*

## OPINION

WRIGHT, Judge.

Relator challenges the senior unemployment review judge's dismissal of his unemployment-benefits appeal as untimely. We affirm in part and reverse in part.

## FACTS

In 1995, relator Larry Rowe suffered a viral heart attack that resulted in congestive heart failure. Rowe's congestive heart failure worsened steadily over the next few years; and in 2002, Rowe was terminated from his job and placed on a waiting list for a heart transplant. Rowe attempted to continue working, but he experienced difficulty maintaining steady employment because of his health condition. Rowe applied for social security disability insurance benefits on April 22, 2003, and began receiving them shortly thereafter. Rowe then established an unemployment-benefits account on May 4, 2003 (2003 account), and collected unemployment benefits intermittently over the next year. One year later, Rowe established a second unemployment-benefits account effective May 2, 2004 (2004 account).

The Minnesota Department of Employment and Economic Development (the department) determined that Rowe was ineligible for benefits effective January 18, 2004, on the 2003 account and ineligible for benefits effective May 2, 2004, on the 2004 account. In both cases, the department adjudicator reasoned that, because Rowe was receiving primary social security disability insurance benefits, he was ineligible to receive unemployment benefits. The department sent Rowe a determination of overpayment in the amount of $4,554.

Rowe appealed both determinations to an unemployment law judge (ULJ). The ULJ found that Rowe began receiving social security disability insurance benefits in April 2003, which rendered him ineligible to receive unemployment benefits during the same period. The ULJ modified the department adjudicator's determination on the 2003 account, concluding that Rowe was ineligible for benefits effective May 4, 2004, rather than January 18, 2004. The ULJ affirmed the department's finding of ineligibility on the 2004 account effective May 2, 2004. Both decisions were issued on June 11, 2004.

Based on the ULJ's decisions, Rowe believed that the determination of overpayment was no longer in effect. But on August 7, 2004, Rowe received another bill from the department for $4,554. Rowe

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

contacted the department to report the error.

After Rowe reported receiving the overpayment notice, the ULJ issued an amended decision on August 18, 2004, correcting the date of ineligibility on the 2003 account from May 4, 2004 to May 4, 2003, the date the account was established. Because of this change, Rowe received a determination of overpayment from the department in the amount of $10,764. On September 3, 2004, Rowe appealed both of the June 11 decisions to a senior unemployment review judge (SURJ). The SURJ dismissed the appeals as untimely. This certiorari appeal followed.

## ISSUE

Did the senior unemployment review judge err in dismissing relator's appeal as untimely?

## ANALYSIS

■■■ We defer to the factual findings of the senior unemployment review judge (SURJ)[1] if they are reasonably supported by evidence in the record; we exercise independent judgment with respect to questions of law. *Ress v. Abbott Northwestern Hosp., Inc.,* 448 N.W.2d 519, 523 (Minn.1989). The timeliness of an appeal presents a question of law, which we review de novo. *Harms v. Oak Meadows,* 619 N.W.2d 201, 202 (Minn.2000); *Stottler v. Meyers Printing Co.,* 602 N.W.2d 916, 918 (Minn.App.1999).

Rowe argues that the SURJ erred in dismissing his appeal, filed on September 3, 2004, as untimely because the August 18, 2004 amended decision, rather than the June 11, 2004 decision, triggered the appeal.[2] To resolve this issue, we must determine whether the August 18, 2004 amended decision is valid. If it is not, the June 11, 2004 decision is the final decision of the department, and the SURJ properly dismissed Rowe's appeal.

■■■ An administrative agency's jurisdiction depends entirely on the statute under which it operates. *State ex rel. Spurck v. Civil Serv. Bd.,* 226 Minn. 253, 259, 32 N.W.2d 583, 586 (1948). Neither agencies nor courts may enlarge an agency's powers beyond that contemplated by the legislature. *Peoples Natural Gas Co. v. Minn. Pub. Utils. Comm'n,* 369 N.W.2d 530, 534 (Minn.1985). An agency's action taken without statutory authority ordinarily is void. *McKee v. Ramsey County,* 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976). Thus, whether the August 18 decision is valid depends primarily on the interpretation of the unemployment-benefits statutes. The construction of a statute is a question of law subject to de novo review. *Lolling v. Midwest Patrol,* 545 N.W.2d 372, 375 (Minn.1996). The party seeking review on appeal has the burden of establishing that an administrative agency exceeded its statutory authority. *Id.* (citing *Markwardt v. State, Water Res. Bd.,* 254 N.W.2d 371, 374 (Minn.1977)).

■■■ The commissioner, on its own motion, may reconsider a determination of eligibility to receive unemployment benefits that has not become final. Minn.Stat. § 268.101, subd. 4 (2004). But there is not

---

1. Effective for decisions issued after August 1, 2004, the statutory title of the decisionmaker conducting review proceedings under Minn. Stat. § 268.105, subd. 2 (2004), has been changed from the representative of the commissioner to "senior unemployment review judge." 2004 Minn. Laws ch. 183, § 71.

2. Rowe appealed both of the SURJ's orders dismissing his appeals as untimely. But because Rowe does not challenge the SURJ's dismissal of his appeal on the 2004 account, we address only the SURJ's order dismissing the appeal on the 2003 account.

a comparable statutory provision authorizing a ULJ to reconsider or amend a decision sua sponte. *See Erickson v. Super Valu,* 343 N.W.2d 698, 701 (Minn.App. 1984) (noting that under predecessor unemployment benefits scheme, no one other than commissioner, on its own motion, has the authority to reconsider its determination). Rather, if the ULJ makes an error in a decision, the relator or the employer may appeal the decision to the SURJ within 30 days. Minn.Stat. § 268.105, subd. 2(a) (2004). The SURJ also may, on its own motion, order a de novo review of the ULJ's decision within the 30–day review period. *Id.* But if 30 days elapse without an appeal or review by the SURJ, the decision of the ULJ becomes the "final department decision." *Id.,* subd. 1(c). Under this statutory scheme, a ULJ's sua sponte amendment of a decision exceeds the ULJ's statutory authority.

Minnesota caselaw has long recognized, however, that administrative agencies have the inherent power to correct erroneous decisions when the statute does not prohibit such correction and the rights of the parties are not prejudiced. *Anchor Cas. Co. v. Bongards Coop. Creamery Ass'n,* 253 Minn. 101, 104, 91 N.W.2d 122, 124 (1958); *Nieszner v. Minn. Dep't of Jobs & Training,* 499 N.W.2d 832, 838 (Minn.App. 1993); *Pfalzgraff v. Comm'r of Econ. Sec.,* 350 N.W.2d 458, 460 (Minn.App.1984).

In *Anchor Casualty,* the Minnesota Supreme Court held that the commissioner of agriculture had implied authority to promptly reverse an erroneous determination. 253 Minn. at 106–07, 91 N.W.2d at 126. The supreme court noted: " 'The power of correction and revision, the better to serve the statutory policy, is of the very nature of such governmental agencies.' " *Id.* at 106, 91 N.W.2d at 126 (quoting *Handlon v. Town of Belleville,* 4 N.J. 99, 71 A.2d 624, 627 (1950)). This power

remains in effect until jurisdiction is lost by appeal or until a reasonable time has run. *Id.* Such reasonable time would at least be coextensive with the time allotted by statute for review. *Id.*

Applying *Anchor Casualty* in the unemployment benefits context, the *Pfalzgraff* court upheld an appeal tribunal chairman's issuance of an amended decision on its own motion. 350 N.W.2d at 460. We noted that the "chairman's reversal came within the 30 day appeal period" and reasoned that, because the amended decision was later vacated and the matter remanded for an evidentiary hearing, the relator was not prejudiced by the irregularities of the case. *Id.* We have similarly held that the chief commissioner's representative had the inherent power to sua sponte vacate a decision of a representative of the commissioner within the 30–day appeal period, after a rehearing, when the chief believed that the decision was clearly erroneous as a matter of law. *Stearns–Hotzfield v. Farmers Ins. Exch.,* 360 N.W.2d 384, 390 (Minn.App. 1985).

Because a relator has 30 days to appeal a decision of the ULJ, Minn.Stat. § 268.105, subd. 2(a), the ULJ's implied power to correct an erroneous decision arguably exists for the same 30–day period. *See Anchor Cas. Co.,* 253 Minn. at 106–07, 91 N.W.2d at 126. Section 268.105 specifically provides, however, that, if an appeal is *not* filed within the 30 days, the ULJ's decision becomes the final decision of the department. Minn.Stat. § 268.105, subd. 1(c). The 30–day statutory time period is "absolute and unambiguous" and must be strictly construed. *Semanko v. Dep't of Employment Servs.,* 309 Minn. 425, 430, 244 N.W.2d 663, 666 (1976); *see also King v. Univ. of Minn.,* 387 N.W.2d 675, 677 (Minn.App.1986) (stating that "the time for appeal from decisions of all levels of the [d]epartment [of employment and

economic development] should be strictly construed"), *review denied* (Minn. Aug. 13, 1986). When a decision becomes final, the department is deprived of jurisdiction to conduct further review. *In re Emmanuel Nursing Home,* 411 N.W.2d 511, 516 (Minn.App.1987), *review denied* (Minn. Oct. 13, 1987); *Johnson v. Metro. Med. Ctr.,* 395 N.W.2d 380, 382 (Minn.App.1986).

     Here, unlike in *Pfalzgraff* and *Stearns–Hotzfield,* the ULJ did not amend the June 11, 2004 decision within the 30–day appeal period. Rather, the ULJ corrected the error 68 days after it issued its original decision—38 days after the decision became final. Once the ULJ's decision became final, the entire department—including the ULJ and the SURJ—lacked jurisdiction to consider the matter further. *Nieszner,* 499 N.W.2d at 838. Without jurisdiction, the ULJ lacked the legal authority to correct an erroneous decision. *See Mackler v. Bd. of Educ.,* 16 N.J. 362, 108 A.2d 854, 857–58 (1954) (holding that administrative decisions are subject to reconsideration as long as the agency still retains control of the proceeding); *Boydston v. Liberty Northwest Ins. Corp.,* 166 Or.App. 336, 999 P.2d 503, 506 (2000) (holding that although administrative agency has inherent power to correct decisions, this power is curtailed by statutory language providing specified period of time when agency decision becomes final).

     Because the 30–day appeal period set forth in Minn.Stat. § 268.105, subd. 1(c), is strictly construed against the relator and plainly establishes when a decision becomes final, we conclude that after 30 days have elapsed, the decision is final as to the relator and as to the department. When the legislature has not conferred on the ULJ the statutory authority to amend a final decision after the department has lost jurisdiction, we are without legal authority to do so. *See Hutchinson Tech., Inc. v. Comm'r of Revenue,* 698 N.W.2d 1, 12 (Minn.2005) (reiterating that courts may not write into a statute what legislature did not); *Hagerty v. Hagerty,* 281 N.W.2d 386, 389 (Minn.1979) (restating the settled rule that extensions of statutory provisions are to be made by legislature, not courts); *Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) (stating that changes to a statute must be made by legislature because "the courts cannot supply that which the legislature purposely omits or inadvertently overlooks").[3]

Having concluded that the August 18 amendment is without legal effect and the June 11, 2004 decision is the final decision of the department, we affirm the SURJ's dismissal of Rowe's September appeal as

---

**3.** The department argues that the August 18 amendment merely corrected a clerical error in the June 11 decision. According to the department, based on the reasoning section of the June 11 decision, the affected parties clearly understood that the "May 4, 2004" date was erroneous and that the date should have read "May 4, 2003." Correcting the date of ineligibility, however, was not a substantively insignificant alteration. Rather, the date determined the amount of Rowe's financial obligations to the department; any change to that date that effectively increased the amount of Rowe's overpayment prejudiced Rowe. *Nieszner,* 499 N.W.2d at 838 (finding relator was prejudiced when department reversed its decision in favor of employer). We decline to assume that Rowe understood that a date of ineligibility in the decision section of a ULJ decision was erroneous based on findings in the reasoning section of the decision. Moreover, if the parties so clearly understood the June 11 decision, the ULJ would not have needed to issue an amendment to trigger the $10,764 overpayment determination. Rather, Rowe would have been receiving bills for $10,764 immediately following the issuance of the June 11 decision.

untimely. But because the record demonstrates that the department is proceeding as if the August 18 amendment is the final department decision, we reverse the SURJ's order to the extent that it implicitly reaffirms the August 18 order, and we reinstate the June 11, 2004 decision, which creates no obligation to reimburse for an overpayment.

## DECISION

Because the ULJ lacked express statutory authority or the inherent power to amend its original decision after the 30-day appeal period had run, the August 18 amendment is void and the June 11 decision is the final decision of the department.

**Affirmed in part and reversed in part.**